**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**                    **18-CR-06091-FPG-JWF**

         **v.**                                              **NOTICE OF MOTION**

**ROBERT E. TILLARD,**

_____ **Defendant.**


**MOTION BY**:                    Sonya A. Zoghlin,
                                  Assistant Federal Public Defender
                                  Attorney for Robert E. Tillard.

**DATE, TIME & PLACE**:           January 4, 2019 at 9:30 a.m., before the
                                  Honorable Jonathan W. Feldman,
                                  U.S. Courthouse, 100 State St., Rochester, New York.

**SUPPORTING PAPERS**:            Affirmation of Sonya A. Zoghlin, affirmed on
                                  December 7, 2018, the attachments hereto, and all
                                  prior proceedings had herein.

**RELIEF REQUESTED**:             An Order granting the relief requested herein.


Dated: December 7, 2018
       Rochester, New York


                                  ___/s/Sonya A. Zoghlin____
                                  Sonya A. Zoghlin
                                  Assistant Federal Public Defender
                                  28 East Main Street
                                  First Federal Plaza, Suite 400
                                  Rochester, New York 14614
                                  585-263-6201
                                  sonya_zoghlin@fd.org
                                  Attorney for Robert E. Tillard


TO:    Katelyn Hartford, AUSA

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**                    **18-CR-06091-FPG-JWF**

                    **v.**                         **AFFIRMATION**

**ROBERT E. TILLARD,**

_____**Defendant.**

      Sonya A. Zoghlin, Assistant Federal Public Defender for the Western District of New York, affirms as follows:

      1.    I am an attorney licensed to practice law in the State of New York and the United States District Court for the Western District of New York, and I represent Robert E. Tillard.

      2.    I am familiar with this case by reasons of my investigation of this matter, conversations with my client and others, and my review of the discovery material provided to date by the government.

      3.    This affirmation is submitted in support of the various forms of relief requested herein, and is based upon the facts as I know them, the Federal Rules of Criminal Procedure, the Federal Rules of Evidence, the United States Constitution, and other pertinent statutes and law.

# TABLE OF CONTENTS

**Page**

I.        INTRODUCTION ........................................................................................ 4

II.       FACTUAL BACKGROUND …………………………………….…....... 4

III.      MOTION TO SUPPRESS TANGIBLE EVIDENCE …. . …...……….....6

IV.       MOTION TO SUPPRESS STATEMENTS………………..………….8

V.        DISCOVERY AND INSPECTION............................................................ 10

VI.       BRADY……………………………………………………………....13

VII.      FED. R. EVID. 404(b)............................................................................... 17

VIII.     FED. R. EVID. 608 & 609 ...................................................................... 17

IX.       DISCLOSURE OF WITNESS STATEMENTS........................................ 17

X.        PRESERVATION OF ROUGH NOTES.................................................. 19

XI.       RESERVATION OF RIGHTS................................................................... 19

## I. INTRODUCTION

4.    Robert E. Tillard ("Tillard") is charged in a three-count indictment with the following offenses: Possession of Marijuana with Intent to Distribute (21 USC §§ 841[a][1]; 841[b][1][D]); Possession of a Firearm in Furtherance of a Drug Trafficking Crime (18 USC § 924[c][1][A][i]; and Felon in Possession of a Firearm (18 USC §§922[g][1]; 924[a][2]). *See* Doc. # 35.

## II. FACTUAL BACKGROUND

5.    According to the discovery materials provided by the government, on February 15, 2017, Rochester Police Department (RPD) officers Minurka and Giancursio were on duty patrolling the "Genesee Section" of the City of Rochester. *See* **Exhibit A** (RPD Incident Report, P.O. Peter Minurka).

6.    Robert Tillard was driving his vehicle in Rochester, heading southeast on Doran Street toward Exchange Street. His 27-year-old girlfriend, Sherry Kitchens, was the front seat passenger. Though Minurka claims to have known that Tillard had only a driver's permit and not a driver's license, he did not know whether Ms. Kitchens was a licensed driver with whom Tillard was legally permitted to drive.

7.    Tillard passed Minurka and Giancursio, who were stopped at the intersection of Doran and Edith Street. When he reached Exchange Street, Tillard turned right at the intersection. He continued on Exchange Street several blocks until he reached the intersection of Exchange and Flint Streets.

8.    As he drove, Tillard followed the posted speed limit. Approaching Flint Street, he signaled within 100 feet of the intersection, indicating that he intended to make a left-hand turn. He turned left onto Flint Street, a dead-end block, ultimately pulling over and stopping his

4

vehicle.  He did not observe the police activate their emergency lights or sirens, which would have indicated their intention to stop him.

9.      Tillard exited his vehicle and ran a short distance before the officers, who had pulled in behind his vehicle, commanded him to "get on the ground." Tillard complied with this command. As he lay on the ground, Giancursio approached him, placed him in handcuffs and escorted him back to the area in which the cars were parked.

10.     During this process, Giancursio asked Tillard why he ran from them. In response to this question, Tillard told Giancursio that he ran because he had "weed" on him. No *Miranda* warnings were provided before this question was asked, nor was it a "spontaneous" statement. Rather, Tillard made this statement in response to the question posed by the police.

11.     Police subsequently searched the jacket Tillard was wearing and recovered multiple, small, zip-lock baggies of marijuana in his pocket. Tillard did not consent to this search, which police allege was conducted incident to his arrest.

12.     Tillard was subsequently placed in a police vehicle, while still in police custody, where he was questioned by Minurka.

13.     Tillard has no recollection of being read his *Miranda* warnings by Minurka or any other police officer, nor did he understand or waive his right to remain silent.

14.      The government has indicated it intends to use the following items of evidence against Tillard at trial:  an oral statement made to Giancursio at the scene of the arrest; a written statement provided to Minurka in the police vehicle following his arrest; a statement made to RPD Officer Barton while Tillard was being transported from the scene; a gun alleged to have been found near the scene of Tillard's arrest; and the baggies of marijuana found in Tillard's jacket pocket. *See* Doc. 41**.**

### III.  MOTION TO SUPPRESS TANGIBLE EVIDENCE

15.    Tillard moves to suppress any evidence seized as the fruit of his warrantless arrest, including baggies of marijuana, on the grounds that the traffic stop was unsupported by probable cause.

<u>Police Did Not Have Probable Cause for a Traffic Stop</u>

16.    An ordinary traffic stop constitutes a limited seizure within the meaning of the Fourth Amendment.  *United States v. Scopo*, 19 F.3d 777, 781 (2d Cir.) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)), *cert. denied*, 513 U.S. 877 (1994).  As such, the stop must be justified by probable cause or "reasonable suspicion, based on specific and articulable facts, of unlawful conduct."  *Id.* (quoting *United States v. Hassan El*, 5 F.3d 726, 729 (4th Cir. 1993).  Evidence obtained as the result of an unjustified traffic stop "is subject to the fruit of the poisonous tree doctrine" and may be suppressed.  *Id.*; *see also Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

17.    On a motion to suppress, a defendant bears the initial burden of establishing that a government official acting without a warrant subjected him to a search or seizure.  *United States v. Arboleda*, 633 F.2d 985, 989 (2d Cir.1980) (citations omitted); *United States v. Chavis*, 48 F.3d 871, 872 (5th Cir.1995); *United States v. Bayless*, 921 F. Supp. 211, 213 (S.D.N.Y. 1996).  Once the defendant has met this burden, the burden then shifts to the government to demonstrate by a preponderance of the evidence, *United States v. Bayless*, 921 F. Supp at 213, that the search or seizure did not violate the Fourth Amendment.  *United States v. Arboleda*, 633 F.2d at 989; *see also United States v. Bonilla Romero*, 836 F.2d 39, 45 (1st Cir. 1987) ("[w]hen it has acted without a warrant, the ultimate burden of persuasion is then upon the government to show that its

evidence is not tainted") (citing *Alderman v. United States*, 394 U.S. 165, 183 (1969)), *cert. denied*, 488 U.S. 817 (1988).

18.     Had Officer Minurka or Giancursio observed Tillard violate the New York Vehicle and Traffic Law, he would have been justified in conducting a traffic stop.  *See, e.g.*, *Whren v. United States*, 517 U.S. 806, 809-10 (1996) ("the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred"); *Scopo*, 19 F.3d 777, 782 (2d Cir.) ("[w]hen an officer observes a traffic offense – however minor– he has probable cause to stop the driver of the vehicle") (internal quotation omitted), *cert. denied*, 513 U.S. 877 (1994).

19.     The government contends Minurka observed Tillard driving a vehicle and assumed, based on his prior knowledge that Tillard had a "learner's permit" and not a license, that he was operating the vehicle unlawfully. The government also contends that Tillard failed to activate his turn signal more than 100 feet before he turned left from Exchange Street onto Flint Street. Tillard, however, disputes these contentions.

20.     Rather, Tillard properly used his turn signal. Moreover, even if Minurka recalled that Tillard had a learner's permit rather than a full license, surely he was aware that Tillard could lawfully operate a vehicle if accompanied by a licensed driver. Minurka does not allege that he knew whether Tillard's passenger, Sherry Kitchens, was a licensed driver.

21.     A dispute of fact, therefore, exists requiring an evidentiary hearing outside of the jury's presence and sufficiently in advance of trial so as to allow the defense to adequately prepare for trial, if necessary.  *See Jackson v. Denno*, 378 U.S. 368 (1984).

22.     In addition, even if Minurka intended to conduct a traffic stop, he never actually did so.  Tillard legally parked his car on Flint Street, exited the vehicle, and ran into a wooded

area nearby. Police chased him, commanded him to "get on the ground," and seized him after he complied.

23.     As a result of this unlawful conduct, any evidence recovered as a direct result of Tillard's seizure and arrest must be suppressed, as well as any additional evidence recovered as a result of this unlawful police conduct. In the alternative, Tillard is entitled to a hearing to determine the facts underlying his arrest.

## IV. MOTION TO SUPPRESS STATEMENTS

24.     As discussed above, the government apparently intends to offer three statements allegedly made by Tillard to the police: the first as he was being taken into custody by Giancursio; another as he was being interrogated by Minurka in a police car; and the third as he was being transported in a police vehicle from the scene of his arrest.

25.      To the extent the government intends to offer these statements as evidence against him, Tillard moves to suppress all statements allegedly made by him on the following grounds:

A.     The statements were the unauthorized by-product of the illegal seizure and interrogation of Tillard pursuant to *Dunaway v. United States*, 442 U.S. 200 (1979);

B.     The statements were the fruit of the poisonous tree, pursuant to *Wong Sun v. United States*, 371 U.S. 471 (1963);

C.     Under the totality of the circumstances, the statements were not "voluntarily made" pursuant to *Jackson v. Denno*, 378 U.S. 368, 377 (1964); *see also* 18 U.S.C. § 3501(a).

D.     The statements were not preceded by adequate warnings, pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).

26.     In *Miranda v. Arizona*, 384 U.S. at 436, the Supreme Court held that the prosecution may not use a defendant's statements that are the product of custodial interrogation unless it demonstrates that the defendant was first warned of his Fifth Amendment privilege

against self-incrimination and then voluntarily waived that right. *Miranda v. Arizona*, 384 U.S. at 444.

> Custodial interrogation exists when a law enforcement official questions an individual and that questioning was (1) conducted in custodial settings that have inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak (the in custody requirement) and (2) when the inquiry is conducted by officers who are aware of the potentially incriminating nature of the disclosures sought (the investigative intent requirement).

*United States v. Rodriguez*, 356 F.3d 254, 258 (2d Cir. 2004) (citing *United States v. Morales*, 834 F.2d 35, 38 (2d Cir. 1987) (internal citations omitted)).

27.     In determining whether a defendant was in custody, a court must consider two questions. First, "whether a reasonable person would have thought he was free to leave the police encounter at issue." *United States v. Newton*, 369 F.3d 659, 672 (2d Cir. 2004), *cert. denied*, 125 S. Ct. 371 (2004). If so, the court must then consider whether the "reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest." *Id.* (citing *California v. Beheler*, 463 U.S. 1121, 1125 (1983)).

28.     If a defendant is in custody at the time statements are made, the government must then demonstrate a valid *Miranda* waiver before any such statements may be admissible. It is the government's burden to prove by a preponderance of the evidence "(1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

29.     In the instant case, none of Tillard's alleged statements were preceded by a valid *Miranda* waiver. The first statement was made after he was commanded to get on the ground, taken into police custody, and asked a question by police that prompted his answer, i.e., "why did you run," followed by "because I had weed on me."  The government does not allege that anyone provided *Miranda* warnings to Tillard before this exchange occurred.

30.     Tillard is alleged to have made a second, written statement when he was questioned by Minurka while he was locked in a police vehicle. Though the government contends Tillard was advised of and waived his *Miranda* rights, Tillard disputes this contention; he does not recall being advised of his rights, nor did he waive them. The third statement made by Tillard to Barton while being transported after his arrest is a direct result of the unlawful seizure and interrogation that preceded it.

31.     Accordingly, Tillard moves for an order suppressing all alleged statements from use at trial. In the alternative, he requests an evidentiary hearing to resolve any disputed issues of fact. *See Jackson v. Denno*, 378 U.S. 368, 377 (A defendant challenging the voluntariness of a confession has the right to "a fair hearing and a reliable determination on the issue of voluntariness.") (1964); *see also* 18 U.S.C. § 3501(a).

## V.    MOTION FOR DISCOVERY AND INSPECTION

32.     Counsel recognizes that the defendant has been provided with voluntary discovery by the government.  To preserve the invocation of his statutory and constitutional rights, however, Mr. Tillard  moves for discovery of the following documents or information set forth below, not previously disclosed in the course of voluntary discovery and pursuant to Federal Rule of Criminal Procedure 16(a)(1) (A)(B)(C)(D) and (E) and also specifically for those items set forth below:

a.  All lab reports regarding any substance allegedly attributed to Mr. Tillard, including the alleged marijuana recovered from his jacket pocket.

b.  A tape or CD of the radio runs between the various law enforcement officers involved in seizing Mr. Tillard and the subsequent investigation of this offense.

c.  A copy or inspection of all results and reports of physical or mental examinations in the possession, custody or control of the government, including state and local agencies cooperating in this prosecution, which are material to the preparation of the defense or which are intended for use by the government as evidence-in-chief at the trial.

d.  A written summary of testimony the government intends to use under Rules 702, 703 or 705 of the Federal Rules of Evidence during its case in chief at trial, including the witnesses' opinions, the basis and reasons therefor, and the witnesses' qualifications. This request shall also include reports and results of tests, examinations or experiments which are material to the preparation of this defendant's defense, whether they are intended for use by the government as evidence-in-chief at the trial.

e.  Disclosure of any and all prior similar acts or convictions of a similar nature to the charge in this case, if any, which the government will seek to rely upon or introduce as evidence at the hearing or trial in this case for any purpose, including proof of knowledge or intent on the part of the defendant and the investigative reports of witnesses concerning such acts.

f.  Any and all evidence in the government's possession, or which could be reasonably acquired by the government, which would be favorable to this defendant on the issues of guilt or sentencing under the principles of *Brady v. Maryland,* 373 U.S. 383 (1963), *Giglio v. United States,* 405 U.S. 150 (1972) and *Kyles v. Whitley,* 514 U.S. 419 (1995). The defense requests any information which would tend to attenuate, exculpate, exonerate, or mitigate this defendant's involvement in the circumstances involved in the Indictment or to impeach a prosecution witness. *United States v. Avellino,* 136 F.3d 249 (2d Cir. 1998) and *Tate v. Wood,* 963 F.2d 20 (2d Cir. 1992). The defense further requests that you inquire of the agents and witnesses involved in the investigation and prosecution of this Indictment regarding the existence of such material.  *Avellino, id.*; *United States v. Payne,* 63 F .3d 1200 (2d Cir. 1995).

g.  The government's position on the applicable sentence under the Sentencing Guidelines should the defendant be convicted of the offense charged. Pursuant to *Brady, Giglio, Kyles, Avellino and Tate,* the defendant specifically requests any and all information which tends to attenuate or mitigate the defendant's involvement in the offense, including any information that would tend to show that:

Case 6:18-cr-06091-FPG-JWF   Document 42   Filed 12/07/18   Page 12 of 20

i.   The defendant was a minimal or minor participant in the offense;

ii.  The defendant demonstrated an acceptance of responsibility for the offense;

iii. The defendant's assistance in the investigation or prosecution of another person who may have committed an offense;

iv.  Evidence that the defendant may have committed the offense to avoid a perceived greater harm;

v.   Evidence that the defendant committed the offense because of coercion, duress, or entrapment; or

vi.  Evidence that the defendant committed the offense while suffering from a reduced mental or emotional capacity.

h.   Pursuant to Rule 12(d) of the Federal Rules of Criminal Procedure, the defendant requests written notification of any evidence that the government intends to use in its case-in-chief that may, in any way, be subject to a motion to suppress or which the defendant is otherwise entitled to discover pursuant to Rule 16.

i.   The defendant requests that all physical evidence, including tape or video recordings made during the investigation of this matter, including recordings that might otherwise be destroyed as part of a normal business practice, be preserved and maintained.

j.   The defendant further requests that the Court direct the government to make available for inspection and/or copying all audio or visual recordings, surveillance logs, or other documentation and information of any type whatsoever obtained in the investigation of this pending indictment or felony complaints or indictments specifically pending against all confidential informant and cooperating witnesses, and all others identified within this indictment as known and unknown to the grand jury which document or make reference to conversations including or observations of this defendant or those identified as others, known and unknown to the grand jury in this indictment.

33.   The defendant further requests an order from this Court directing the government to disclose, pursuant to Rule 16(a)(1)( c) and/or permit the defendant to inspect and copy books, papers, documents, photographs, tangible objects, or similar items which are within the possession, custody or control of the government, specifically including the following:

a.   All books, papers, documents, or tangible objects the government plans to offer into evidence at trial;

b.  Any and all property in the possession of the government or its agents or seized by the government or its agents or alleged by the government to belong to the defendant;

c.  Any and all charts, maps or other diagrams  which the government intends to use at trial or which the government, or New York State or law enforcement authorities are in possession of and which were made or used during the investigation of this matter for the preparation of the instant indictment;

d.  The logs or investigative notes of any United States, or New York State law enforcement agent prepared in connection with the investigation of this case including, but not limited to, any or all records prepared by the Rochester Police Department or Monroe County Crime Laboratory, or other law enforcement personnel;

e.  Any and all supporting documents concerning the investigative notes of whatever nature of each and every government agent, or New York State agent, who participated in the alleged surveillance, search, seizure and arrest of any person, property or vehicle in connection with this indictment.

34.     The defendant also requests that the government provide him with copies of any and all photographs taken by any law enforcement agents, including the Federal government, the New York State Police, the City of Rochester Police Department, or any other law enforcement agencies, which relate to the investigation of the events underlying the present indictment.

35.     The defendant further notes that pursuant to Rule 16 the government's duty to disclose the requested materials herein is a continuing one and the defense specifically requests that any and all materials requested herein which are acquired or come to the attention of the government subsequent to the disposition of the present motion be promptly supplied to the defendant.

36.     With respect to any items demanded by the defense which the Court in its discretion may not allow disclosure of, it is respectfully requested that the court, in the interests of justice, require the government to disclose the existence of such items and supply copies to the

Court, *in camera*, so that these materials and information, can be preserved and their existence established.

## VI.    MOTION FOR DISCLOSURE OF BRADY MATERIAL

37.    The defendant moves this court to grant an order compelling the prosecution to disclose to the defendant all evidence in the possession, custody or control of the prosecution the existence of which is known, or by the exercise of due diligence should become known, to the attorney for the prosecution.  This motion is made under the authority of *Brady vs. Maryland*, 373 U.S. 83 and *Kyles v. Whitley*, 514 U.S. 419 (1995).

38.    The information requested should include all evidence which may be favorable to the defendant and material to the issue of guilt or punishment, or bears upon and could reasonably weaken or affect any evidence proposed to be introduced against the defendant by the prosecution, or bears in any material degree on the charges contained in the indictment or as relevant to the subject matter of the indictment and prosecution under it, or which may lead to exculpatory material or, in any manner, may aid the defendant in the ascertainment of the truth.

39.    <u>This requests includes, but is not limited to, the following</u>:

    a.    All previous allegations or complaints of unlawful conduct made against *RPD Officer Peter Minurka*, including allegations of harassment; physical abuse; falsification of police reports or other evidence; false testimony; or tampering with evidence;

    b.    All previous occasions (and related documents) in which *RPD Officer Peter Minurka* is alleged to have failed to follow RPD protocol regarding Body Worn Cameras (BWC) including, but not limited to, failure to activate his BWC as required by RPD General Orders during the course of police activity;

    c.    Any written or recorded statements, admissions or confessions made by any witness or co-defendant or co-conspirator whether named or unnamed which may be exculpatory, non-incriminatory, or otherwise favorable to this defendant, or any summaries, synopses, notes, memoranda or resumes thereof, regardless of whether such statement were reduced to writing and regardless of whether the government intends to use such statements at trial;

d.  The name and address of such witnesses and the names and addresses of any other witnesses who might be favorable to the defendant;

e.  Any and all written statements made by any witness who has been interviewed by an agent of the government in connection with the subject matter in this case and whom the government presently does not intend to call at trial, regardless of whether such statement has been signed or otherwise adopted or approved by said witness as well as any stenographic, mechanical or electrical or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement by said witness to an agent for the government;

f.  The names and addresses of all persons who may have some knowledge of the facts of the present case or who have been interviewed by agents of the government in connection with the case;

g.  The criminal records or any list or summary reflecting the criminal records of all persons the prosecution intends to call at trial;

h.  Any notes, memoranda, summaries, reports or statements of any kind prepared by agents or the government in connection with the investigation of this case;

i.  Any notes, memoranda, summaries, reports or statements of any kind prepared by persons other than agents of the government in connection with the investigation of this case;

j.  Information which can be used to impeach government witnesses including matters which might or could motivate the testimony of such persons, including copies of plea agreements or other agreements providing for cooperation by such witness in exchange for favorable treatment by the government, as well as any acts of criminal, immoral or vicious conduct by said persons during their lifetime and factors which might have a bearing upon any bias or hostility of such person toward the defendant;

k.  Any record of previous arrests or convictions or any other evidence or information demonstrating participation in dangerous, vicious, immoral or criminal behavior on the part of any persons intended to be called as witnesses by the prosecutor, including but not limited to ``rap sheets'', police personnel records, or other memoranda;

l.  Any statements known to be false or erroneous made to a public servant engaged in law enforcement activity or a grand jury or a court by persons intended to be called as witnesses;

m.  Any evidence, testimony, transcript, statement or information indicating that any prospective government witness on any occasion gave false, misleading or

15

contradictory information regarding the charge at bar or any related matters, to persons involved in law enforcement or to their agents or informers;

n.   Any evidence, testimony, transcript, statement or information indicating that any prospective government witnesses have given statements which are or may be contradictory to each other;

o.   Any information recounting a misidentification of the defendant as a perpetrator of the crime(s) charged or indicating a failure on the part of any potential witness to identify the defendant as the perpetrator of the crime(s) charged;

p.   Any information indicating that any prospective government witness has or had a history of mental or emotional disturbance  *See Pennsylvania v. Richie*, 480 U.S. 39 (1878); *United States v. Pallot*, 43 Fed Appx 473 (3rd Cir. 2002);

q.   Full disclosure of any consideration, promise of consideration, or expectation of consideration offered to any prospective government witness, including but not limited to, leniency, favorable treatment, assistance with respect to any pending legal proceeding, or any reward or other benefit whatsoever which will of could be realized by the witness as a result of their testimony;

r.   Any threats, express or implied, direct or indirect, made to any government witness, including criminal prosecution or investigation, any change in the probationary, parole, or custodial status of the witness, or any other pending or potential legal disputes between the witness and the government or over which the government has a real, apparent, or perceived influence;

s.   Complete information of each occasion when each witness who was or is an informer, accomplice, or co-conspirator has testified before any court or grand jury, including date, caption, and indictment number of the case;

t.   Any information to the effect that all or some of the evidence which may be utilized by the government at trial was illegally or improperly obtained or was obtained even partially as the result of the improper acquisition of some other evidence or information;

u.   All evidence in the possession, custody or control of the government or any police agency, the existence of which is known to the government, or which by due diligence may become known to the government, which may be, or may tend to be favorable or exculpatory to the defendant, and which is or may be material to the issue of guilt or punishment.

40.     Counsel specifically reserves the right to make any additional requests for material covered by *Brady vs. Maryland, supra*, at the time this motion is argued, or at such other time as the existence of such material shall become known to counsel or the defendant.

41.      It is respectfully requested that the Court instruct the government in its search for ``*Brady*-type'' material that it specifically interview those members of the law enforcement agency involved in the preparation of this case for prosecution and who, therefore, had contact with any witness whom the prosecution intends to call upon the trial of this action for the type of information in their files relative to the requests made above.

## VII.  FED. R. EVID. 404(b)

42.     Pursuant to FED. R. CRIM. P. 12(b) and FED. R. EVID. 404(b), Tillard requests that the government notify him of any evidence that the government contends would be admissible under FED. R. EVID. 404(b).  Such notice would permit Tillard to file appropriate motions to suppress, prior to trial, any evidence the government contends would be admissible to demonstrate "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of a mistake."  FED. R. EVID. 404(b).

## VIII.  FED. R. EVID. 608 & 609

43.     The defense requests disclosure of all evidence of convictions and prior bad acts committed by Tillard that the government intends to use for impeachment of the defendant, should he testify at trial, pursuant to FED. R. EVID. 608(b) and 609(a).

## IX.  DISCLOSURE OF WITNESS STATEMENTS

### Contents of Disclosure

44.     Tillard moves for disclosure of witness statements pursuant to 18 U.S.C. § 3500 ("*Jencks Act*") and FED. R. CRIM. P. 26.2.  The Second Circuit has interpreted this statute to

include a substantially verbatim statement of a witness' words as recorded by a government agent if they could fairly be deemed to reflect fully and without distortion what had been said to a government agent. *United States v. Scotti*, 47 F.3d 1237, 1249 (2d Cir. 1995).

45.     The defense further requests an order requiring production of *Jencks Act* materials, namely all statements and reports in the possession of the United States which were made by government witnesses or prospective government witnesses and which relate to the subject matter about which those witnesses may testify, as per the *Jencks* Act, 18 U.S.C. § 3500, and Rule 26.2 of the Federal Rules of Criminal Procedure.

A.  The term "statements" shall include:

(i) Any written statement made by a witness and signed or otherwise adopted or approved by him;

(ii) Stenographic, mechanical, electronic or other recording, or transcriptions thereof, which are a substantially verbatim recital of an oral statement made by a witness and recorded contemporaneously with the making of such oral statement;

(iii)  A statement, however taken or recorded, or a transcription thereof, if any, made by a witness to a grand jury;

(iv) Recorded statements which fairly and fully reflect, without distortion, comments made to a government agent by a witness, *United States v. Scotti,* 47 F.3d 1237, 1249 (2d Cir. 1995);

(v) Any and all rough notes of witness interview(s) taken or obtained in any investigation of the defendant including federal, state, local, and other investigations whether or not the contents thereof have been incorporated in official records, *See id.*;

(vi) Any notes and memoranda made by government counsel during the interview of any witness(es) intended to be called by the government in their direct case, *Goldberg v. United States*, 425 U.S. 94, 101-108 (1976); and

(vii) All surveillance reports made or adopted by a witness. *United States v. Petito*, 671 F.2d 68, 71 (2d Cir. 1981).

**Timing of Disclosure**

46.     Prompt pre-trial delivery of *Jencks* material will insures that Tillard' fundamental rights to a fair trial and due process are safeguarded.  Therefore, the defense seeks production of the *Jencks* material one month prior to trial for the purposes of judicial economy, to expedite discovery and the trial of this case.

47.     Although a District Court may not ordinarily compel disclosure of *Jencks* material prior to the conclusion of a witness' direct examination, early disclosure of *Jencks* material obviates trial interruptions and permits defense counsel to study the disclosures.  *See United States v. Campagnuolo*, 592 F.2d 852, 858 n.3 (5th Cir. 1979).  Courts have, on a case-by-case basis, invoked their discretion to require production of *Jencks Act* statements in advance of the trial so that unnecessary delays will not take place during the course of the trial.  *See United States v. Percevault*, 490 F.2d 126, 132 (2d Cir. 1974); *United States v. Feola*, 651 F. Supp. 1068, 1139-40 (S.D.N.Y. 1987).

48.     Wherefore, the defense requests that the Court order disclosure of the *Jencks* material one month prior to the scheduled trial date.

## X.  PRESERVATION OF ROUGH NOTES

49.     Mr. Tillard moves for an Order of this Court requiring all government agents and officers who participated in the investigation in this case to retain and preserve all rough notes taken as part of their investigation, whether or not the contents of the notes are incorporated in official records.

50.     This motion is made so that the trial court can determine whether disclosure of the notes is required under *Brady*, *Agurs*, *Giglio* and/or the Jencks Act.  *United States v. Sanchez*,

635 F.2d 47 (2d Cir. 1980); *United States v. Eleusma*, 849 F.2d 76 (2d Cir. 1988), *cert. denied*, 489 U.S. 1097 (1989); *United States v. Koskerides*, 877 F.2d 1129 (2d Cir. 1989).

51.    This motion is intended to put the government and its agents on notice that, from this point on, any and all rough notes referred to above should be preserved.

## XI.  RESERVATION OF RIGHTS

52.    Mr. Tillard respectfully requests the opportunity to supplement this pleading should the government's response raise additional issues of fact or law not sufficiently addressed herein including, but not limited to, an affidavit from the defendant, Robert Tillard.

Dated: December 7, 2018
          Rochester, New York

                                        Respectfully submitted,


                                        __/s/Sonya A. Zoghlin
                                        Sonya A. Zoghlin
                                        Assistant Federal Public Defender
                                        28 E. Main Street, Suite 400
                                        Rochester, New York 14614
                                        585-263-6201
                                        sonya_zoghlin@fd.org
To: Katelyn Hartford, AUSA            Attorney for Robert Tillard